UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GEORGE FOSTER-BEY | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 3:02CV618(MRK) |
| v. | : | |
| | : | |
| JOHN POTTER, POSTMASTER | : | |
| GENERAL, UNITED STATES | : | |
| POSTAL SERVICE | : | NOVEMBER 17, 2003 |
| | : | |
| Defendant. | :_____ | |

RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, George Foster-Bey, brings this action under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §2000e, et seq., and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §621, et seq., against Defendant United States Postal Service (USPS). Mr. Foster-Bey contends that USPS discriminated against him on the basis of race and age and retaliated against him for filing complaints of discrimination. USPS has moved for summary judgment [doc. #32]. For the reasons set forth below, the motion is GRANTED in part and DENIED in part.

**BACKGROUND**

Mr. Foster-Bey is a sixty-three year old African-American male who is employed by the

1

USPS as a Supervisor, Distribution Operations (SDO), on the evening shift, or Tour 3, at the

Hartford, Connecticut Processing and Distribution Center.  He has worked for the USPS since

1984. Def.'s Local Rule 9(c)(1) Statement [Doc. #34] at ¶1, 2.

On the evening of February 21, 2001, an incident occurred involving the small parcel

bundle sorter machine (SPBS), which processes bundled mail and packages. Mr. Foster-Bey

supervised the operations of the SPBS during his shift, and the incident in question occurred

toward the end of his shift that evening. A maintenance technician, John Georgian, was allegedly

working inside the SPBS when the machine was turned on, putting him in considerable danger.

Mr. Georgian was able to disconnect the power to the machine, and he emerged unharmed.[1] He

then reported the incident to his supervisor and stated that he had seen Mr. Foster-Bey at the

control end of the SPBS immediately upon emerging from it, suggesting to Mr. Georgian that

Mr. Foster-Bey had turned on the SPBS while Mr. Georgian was inside the machine. Mr. Foster-

Bey left his shift on the evening of February 21, 2001 without having been told of any problem,

and remained out on a prescheduled annual leave from February 22 through February 24.

Personnel at the Distribution Center undertook a preliminary investigation of the incident

that evening and the following day, February 22. Both parties agree that Mr. Foster-Bey was not

questioned as part of the initial inquiries and that a decision was made on February 22, 2001 by

William Galligan, the plant manager, to place Mr. Foster-Bey on administrative leave pending

the results of a continuing investigation. Mr. Foster-Bey's supervisor, Maria Prattson, sent him a

letter dated February 23, 2001, advising him that he was placed on administrative leave status

---

[1]Mr. Foster-Bey denies that Mr. Georgian was in the machine at the time. Pl.'s Local Rule
9(c)(2) Statement [Doc. #36], at ¶A.12.

until further notice. Def.'s Local Rule 9(c)(1) Statement [Doc. #34] at ¶21. The letter did not state the nature of the allegations against Mr. Foster-Bey which caused him to be placed on administrative leave. Pl.'s Local Rule 9(c)(2) Statement [Doc. #36], Ex. A.

Mr. Foster-Bey was scheduled to return to work on Tuesday, February 27, 2001, due to his annual leave from February 22 to February 24, and his having Sundays and Mondays off. Rick Uluski, Lead Manager of Distribution Operations for the facility, first made contact with Mr. Foster-Bey through a letter sent March 9, 2001,[3] requesting that Mr. Foster-Bey come in for an interview with investigators on March 13, 2001. Mr. Foster-Bey did so and then submitted a written statement on March 23, 2001. The investigators completed a written report on March 23, 2001, concluding that both Mr. Foster-Bey and Mr. Georgian had failed to follow proper safety procedures on the evening in question and that safety measures on the SPBS itself had not performed properly. Def.'s Local Rule 9(c)(1) Statement [Doc. #34] at ¶32; Sirotnak Decl., *Id.*, Ex. 4, Attach. D; Uluski Decl., *Id.* Ex. 3.[4]  Mr. Foster-Bey denies that he was responsible in any way for the incident in question. Mr. Foster-Bey was permitted to return to work on March 26, 2001.

While on administrative leave for nearly a month, Mr. Foster-Bey lost no pay or benefits,

---

[3]Defendant claims it left a message with an adult female at Mr. Foster-Bey's residence on March 8, 2001, though Mr. Foster-Bey denies ever receiving such a message.  Pl.'s Local Rule 9(c)(2) Statement [Doc. #36], at ¶A.27.

[4]Although the report does not seem to reach specific conclusions with regard to fault, Mr. Uluski testified that his conclusions were that Mr. Foster-Bey had started the machine without knowing that the mechanic was working on it, that the SPBS machine's safety mechanisms had failed, and that the maintenance staff needed to be reminded to take the necessary safety steps to ensure that the machines could not be turned on while they were inside them. Uluski Decl., Def.'s Local Rule 9(c)(1) Statement [Doc. #34], Ex. 3, ¶13.

but did not receive the night differential of approximately $400 to which he would have been entitled had he been able to work his shift during the period of administrative leave.[5] No document concerning the incident or the administrative leave was placed in Mr. Foster-Bey's official personnel folder. Mr. Georgian was not subject to discipline of any kind.

Following his return to work, Mr. Foster-Bey claims that he suffered a diminution in managerial status in two respects. First, Mr. Foster-Bey claims that being placed on administrative leave and returning to work without having been exonerated publicly for the incident caused his standing and reputation among his subordinates to suffer substantially and that he was not thereafter accorded the respect by fellow employees that a supervisor would otherwise enjoy. Second, he claims that his superiors imposed on him, and him alone, specific restrictions that further eroded his standing among fellow employees and impaired his ability to conduct his supervisory duties. These claimed restrictions include a reduction, without his knowledge, of staffing in his unit, below the level of comparable units, as well as changes in the way in which Mr. Foster-Bey could operate the SPBS. Specifically, he asserts that he was officially prohibited from turning on the SPBS and was required to call a maintenance technician to start the machine, while all other SDO's were allowed to start the SPBS themselves. Furthermore, Mr. Foster-Bey claims that, following his return to work after administrative leave, his actions were micromanaged by his supervisors, compromising his authority to run his own operation and further detracting from his ability to manage the employees he supervised. Finally, Mr. Foster-Bey claims that he has not been offered opportunities for advancement, in contrast to

---

[5]Mr. Foster-Bey claims that his supervisor, Maria Prattson, assured him that she would take care of getting him reimbursed for the loss of the night differential. Pl.'s Local Rule 9(c)(2) Statement [Doc. #36], at ¶B.17.

other employees, and asserts a more generalized claim about a hostile work environment at the postal facility.

Mr. Foster-Bey alleges that all of the foregoing actions were the result of race and age discrimination by the USPS and that the USPS also was retaliating against him for having filed discrimination claims (ultimately unsuccessful) against his immediate supervisor, Maria Prattson, in the past. On or about May 1, 2001, Mr. Foster-Bey filed an EEO complaint, alleging that he had been placed on administrative leave in March 2001 as a result of discrimination based on race and age and in retaliation for protected activity. The complaint was dismissed when Mr. Foster-Bey filed suit in this Court.

**DISCUSSION**

**I.      Standard for Summary Judgment**

Summary judgment is appropriate when there is no dispute as to a genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party carries the burden of demonstrating that there is no genuine material dispute of fact. *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 133 (2d Cir. 2000). The Second Circuit has held that "in determining whether a genuine issue has been raised, the inferences to be drawn from the underlying facts revealed in the affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." *Tomka v. Seiler*, 66 F.3d 1295, 1304 (2d Cir. 1995). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge." *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, it is also clear that "a party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 248, quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968) (alteration in the original and internal quotations omitted).

The Second Circuit has noted that additional considerations apply when ruling on a motion for summary judgment in an employment discrimination case. "A trial court must be cautious about granting summary judgment to an employer when, as here, its intent is at issue. Because writings directly supporting a claim of intentional discrimination are rarely, if ever, found among an employer's corporate papers, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed by the jury, would show discrimination." *Gallo v. Prudential Residential Servs., Ltd. Pshp.*, 22 F.3d 1219, 1224 (2d Cir. 1994) (internal citations omitted). Although summary judgment is sparingly used when intent and state of mind are at issue, an employment discrimination plaintiff nonetheless "must come forward with at least some credible evidence that the actions of the individual appellees were motivated by racial animus or ill-will." *Grillo v. New York City Transit Auth.*, 291 F.3d 231, 234 (2d Cir. 2002). "The summary judgment rule would be rendered sterile . . . if the mere incantation of intent and state of mind would operate as a talisman to defeat an otherwise valid motion." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d. Cir. 1985).

## II.    Subject Matter Jurisdiction

As a threshold matter, this Court must ensure that it has subject matter jurisdiction over

all of Mr. Foster-Bey's claims. Title VII provides that complainants must file a charge with the

EEOC as a prerequisite to bringing a Title VII action in federal court. 42 U.S.C. §2000e-5(e).[6]

Federal courts have jurisdiction to hear only those Title VII claims "that either are included in an

EEOC charge or are based on conduct subsequent to the EEOC charge which is 'reasonably

related' to that alleged in the EEOC charge." *Butts v. New York City Dep't of Hous. Pres. & Dev.*,

990 F.2d 1397, 1401 (2d Cir. 1993). The EEO complaint filed on May 1, 2001 refers only to the

administrative leave on which Mr. Foster-Bey was placed in March 2001. *See* Pl.'s Suppl. Brief

in Supp. of Opp'n to Summ. J. [Doc. #42], Ex. 1.[7] Therefore, the Court can exercise jurisdiction

only over the claims involving Mr. Foster-Bey's administrative leave and other claims

"reasonably related" to his placement on administrative leave.

The "reasonably related" requirement has been understood to allow for "loose pleading."

*Deravin v. Kerik*, 335 F.3d 195, 200-01 (2d Cir. 2003). It applies when "the conduct complained

of would fall within the scope of the EEOC investigation which can reasonably be expected to

grow out of the charge that was made." *Id.* (internal cites omitted). *See also Butts*, 990 F.2d at

1402. The loose pleading standard is designed to take into account the fact that EEOC charges

are regularly filed, as here, by employees who do not have the benefit of counsel. *Deravin,* at

---

[6]The ADEA contains an analogous requirement. 29 U.S.C. §626(d)(2).

[7]As Mr. Foster-Bey described his complaint: "I received a certified letter stating that I was placed in an administrative leave status because of an alleged safety infraction. The letter did not specify any rule that I broke." Pl.'s Suppl. Brief in Supp. of Opp'n to Summ. J. [Doc. #42], Ex. 1.

201. Precise pleading is not required for purposes of Title VII exhaustion. *Id.* at 202.[8]

In this case, Mr. Foster-Bey's EEOC complaint refers only to his being placed on administrative leave in violation of the anti-discrimination laws. Thus, his other allegations regarding staff reductions, Pl.'s Local Rule 9(c)(2) Statement [Doc. #36], at ¶B.23, the restrictions imposed on his operation of the SPBS, *id.*, at ¶B.9, defendant's failure to promote him, *id.*, at ¶B.22, and a generalized hostile environment at the USPS facility, *id.*, at ¶B.18, can be considered by this Court only to the extent that they would reasonably be expected to fall within the scope of any EEOC investigation growing out of Mr. Foster-Bey's administrative leave charge.

Mr. Foster-Bey's allegations of post-leave diminution of status satisfy the "reasonably related" requirement, as they all arise from the same course of allegedly discriminatory conduct. The removal of Mr. Foster-Bey's authority to turn on the SPBS was explicitly connected to the underlying incident giving rise to his placement on administrative leave.  Moreover, the key reductions of staff occurred immediately after the incident[9] and are alleged by Mr. Foster-Bey to have been undertaken in direct response to the incident and to have been connected to the general

---

[8]The Second Circuit has recognized two other types of claims that fall under the "reasonably related" standard. These are (1) "a claim alleging retaliation by an employer against an employee for filling an EEOC charge," and (2) "a claim where the plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." *Deravin*, 335 F.3d, at 201 n.3 (internal quotations omitted). Neither of these is applicable here.

[9]Mr. Foster-Bey concedes that the reductions began before the incident, but asserts that most of his staff was taken away in June of 2001. *See* Foster-Bey Dep., Pl.'s Local Rule 9(c)(2) Statement [Doc. #36], Ex. O, p.260.

reduction in managerial status he claims to have suffered as a result of the incident.

Mr. Foster-Bey's allegations regarding the failure to promote him and his generalized hostile environment claims, however, do not satisfy even the "loose pleading" standard. Reading his EEOC charge liberally, as is required,[10] the Court cannot conclude that his failure to promote and hostile environment claims could reasonably be expected to grow out of an EEOC investigation regarding the placement of Mr. Foster-Bey on administrative leave as a result of the incident involving the SPBS. Indeed, by plaintiff's own admission, the facts underlying those claims predate the administrative leave charge. *See* Foster-Bey Dep., Pl.'s Local Rule 9(c)(2) Statement [Doc. #36], Ex. O, p.188-93.[11] They could not, therefore, be considered reasonably related to the administrative leave charge. *See Butts*, 990 F.2d at 1403. This is not a case where Mr. Foster-Bey simply neglected to attach a legal label to underlying factual allegations. *See, e.g., Deravin*, 335 F.3d at 202. Rather, these claims have no ostensible connection to the administrative leave claim and appear to be an effort to shoe-horn into this case any and all complaints Mr. Foster-Bey has had with the USPS over the duration of his career there. *Cf., Butts*, 990 F.2d at 1403. As such, the charges related to a failure to promote and a generalized

---

[10]*See, e.g.*, *Deravin*, 335 F.3d at 201. The Court here notes that though Mr. Foster-Bey is entitled to a liberal reading of his EEOC complaint, he is not a rookie filer, as he has filed EEOC charges before, and had a previous case in this Court where he benefitted from a liberal reading of an EEOC complaint. *Foster-Bey v. Henderson*, 2000 U.S. Dist. LEXIS 6634, at *9-*10 (D. Conn. April 7, 2000) ("The Court finds that Plaintiff, as a pro se unschooled in the detailed requirements of a Title VII case, did present a claim of racial discrimination which is reasonably related to the present Complaint.").

[11]Mr. Foster-Bey also acknowledges that he has not applied for a promotion, at least since 1993. *See* Foster-Bey Dep., Pl.'s Local Rule 9(c)(2) Statement [Doc. #36], Ex. O, p.206.

hostile environment are dismissed for failure to exhaust administrative remedies. *See, e.g., Id.* at 1402. The Court will, therefore, consider only Mr. Foster-Bey's administrative leave claim and those post-leave charges related to that claim.

### III.    Plaintiff's Title VII and ADEA Claims

### A.    Legal Standard

To set forth a *prima facie* case under Title VII, a plaintiff must show four elements: (1) that he is a member of a protected group; (2) that he was qualified for his position; (3) that he suffered an adverse employment action; and (4) that the adverse action took place under circumstances giving rise to the inference of discrimination. *See, e.g., Fisher v. Vassar College*, 114 F.3d 1332, 1335 (2d Cir. 1997) (en banc). The ADEA standard for setting forth a *prima facie* case is identical to that of Title VII. *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 639 (2d Cir. 2000). As the Second Circuit has repeatedly emphasized, however, a plaintiff's burden in establishing a *prima facie* case is minimal. *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 102 (2d Cir. 2001); *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 710 (2d Cir. 1998).

Once the plaintiff establishes a *prima facie* case, "the burden of production shifts to the employer who must defeat a rebuttable presumption of discrimination by articulating a legitimate, non-discriminatory reason for the employment decision." *Byrnie*, 243 F.3d at 102. The employer's burden of production is also not very demanding. *Bickerstaff v. Vassar College*, 196 F.3d 435, 446 (2d Cir. 1999). If the employer offers a non-discriminatory explanation for the employment decision, the presumption raised by the *prima facie* case is rebutted and the factual

inquiry "proceeds to a new level of specificity." *Fisher,* 114 F.3d at 1336. The plaintiff then bears the ultimate burden of establishing that the employer's proffered reasons are a pretext for discrimination. *Id.*[12]

### B.    *Prima Facie* Case

Mr. Foster-Bey easily satisfies his burden of demonstrating the first two prongs of the *prima facie* case, for both his racial discrimination and age discrimination claims. The parties agree that he is African-American and that he was sixty-three years old at the time of the administrative leave incident. Def.'s Local Rule 9(c)(1) Statement [Doc. #34], at ¶2. Additionally, it is undisputed that Mr. Foster-Bey is qualified for his position.

The third prong of the *prima facie* case requires plaintiff to have suffered an "adverse employment action," and that issue is a closer question in this case. The Second Circuit defines "adverse employment action" as occurring when a plaintiff endures a "materially adverse change in the terms and conditions of employment." *Galabya,* 202 F.3d at 640 (internal cites omitted). A material adverse change is a change in working conditions that is "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* (quoting *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993). "A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less

---

[12]The Second Circuit has held that the Supreme Court's decision in *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000), did not alter the Circuit's governing standard as set forth in *Fisher*. *See James v. New York Racing Assoc.*, 233 F.3d 149, 156 (2d Cir. 2000) ("In conclusion, upon careful study of the *Reeves* opinion, we can find no indication in it that the Supreme Court has rejected what we said in *Fisher*.").

distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Id.* (quoting *Crady*, 993 F.2d at 136).[13]

The employment action at the heart of Mr. Foster-Bey's complaint is his placement on administrative leave for a period of about one month. At oral argument, the parties disagreed over whether this constituted an adverse employment action. It is unquestioned that Mr. Foster-Bey's formal status over the long-term was unaffected by the leave; his title and position were unchanged, his salary remained at the same level, and the incident was not memorialized in his personnel file in any way. It also seems unlikely that the loss of the $400 night differential would be sufficient to constitute a "material adverse change," and at oral argument, Mr. Foster-Bey did not press this argument. As such, the administrative leave does not fit into any of the specific categories listed by the Second Circuit in *Galabya*.

Nonetheless, *Galabya* recognizes that a material change can be indicated by "other indices . . . unique to a particular situation." *Id.* at 640. "Adverse job action is not limited solely to loss or reduction of pay or monetary benefits. It can encompass other forms of adversity as well." *See Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996) (quoting *Collins v. State of Illinois*, 830 F.2d 692, 703 (7th Cir. 1987). Neither the parties nor the Court have found a case that addresses the issue of whether being placed on administrative leave constitutes a material adverse action. Applying the standard set forth in *Galabya*, it seems clear that administrative leave presents a heavily contextual question. Employers will understandably feel the need on

---

[13]Mr. Foster-Bey's earlier case was dismissed on this basis, as the Court found no evidence that he had suffered an adverse employment action. *Foster-Bey*, 2000 U.S. Dist. LEXIS 6634, at *11-*12.

occasion to place employees on temporary administrative leave when investigating incidents,

particularly those raising safety concerns as in this case. Short-term leaves of this sort would

seem to be a sensible way to investigate incidents in certain circumstances, and if the matter is

resolved and the employee returns to work promptly, the placement on administrative leave in

and of itself would likely not constitute an adverse employment action. At the same time, if an

employee were placed on administrative leave and barred from coming to work for six months,

that would likely constitute a material change in the terms and conditions of the employee's

employment, regardless of how the matter that initially led to the administrative leave is resolved.

In evaluating whether the placement of an employee on administrative leave constitutes an

adverse employment action, then, the Court must look beyond the fact of the leave itself to the

duration of the leave and the circumstances attending the employee's return from leave.

        While it is a close question, the Court concludes that being prohibited from coming to

work for nearly a month, despite his continuing to receive full pay, did change Mr. Foster-Bey's

"terms and conditions of employment" sufficiently to constitute an adverse employment action in

the particular circumstances of this case.[14] Mr. Foster-Bey alleges that the placement on

administrative leave without public exoneration, the reduced staffing, and the removal of

authority to turn on the machine himself which followed his return lessened his status in the eyes

_____

        [14] The USPS argues that the governing Postal Service procedures provide that
administrative leave is not a disciplinary action. Uluski Decl., Def.'s Local Rule 9(c)(1)
Statement [Doc. #34], Ex. 3, ¶16. The Court, however, does not find the employer's
characterization of the action to be dispositive, especially in the contextual setting of
administrative leave, and will make its own determination as to the adversity of the action as a
matter of law.

of his subordinates and that the combination of these events adversely affected his position.  In effect, he asserts that his return to work following administrative leave was cast in a light tantamount to a *de facto* demotion. *See also* Ballymanda Dep., Pl.'s Local Rule 9(c)(2) Statement [Doc. #36], Ex. S, p.28-29; Turner Dep., *Id.*, Ex. R, p.56-60 (testifying that being placed on administrative leave would negatively affect a manager's ability to perform his or her duties). The Court believes that these allegations are sufficient to meet the *de minimis* burden of the *prima facie* case.

The fourth showing Mr. Foster-Bey must make to satisfy the *prima facie* case is that the adverse action must have occurred under circumstances giving rise to an inference of discrimination. *E.g., Byrnie*, 243 F.3d at 101. Mindful that the burden on Mr. Foster-Bey is extremely minimal at this stage, and that all evidence must be viewed in the light most favorable to Plaintiff, the Court turns to the record to assess the alleged conduct giving rise to such an inference. The Second Circuit has held that "circumstances from which invidious discrimination may be inferred include preferential treatment given to employees outside of the protected class." *Howley v. Town of Stratford*, 217 F.3d 141, 150 (2d Cir. 2000).

Applying that standard, the Court concludes that Mr. Foster-Bey has made allegations sufficient to make out a *prima facie* case of race and age discrimination. It is undisputed that following the incident, Mr. Foster-Bey was put on administrative leave and Mr. Georgian, who is a thirty-nine year old Caucasian, was not. Furthermore, despite the investigators' conclusion that both Mr. Foster-Bey and Mr. Georgian had failed to follow proper safety procedures, Mr. Foster-Bey alleges the direct consequence of being prohibited from turning on the machine himself,

14

while no actions were taken against Mr. Georgian. Pl.'s Local Rule 9(c)(2) Statement [Doc. #36}
¶B.11. Mr. Foster-Bey also claims that the regulation against turning on the SPBS, which is
ostensibly directed at all SDO's, is enforced only against him, and not against other, Caucasian,
SDO's, most, if not all, of whom are younger than Mr. Foster-Bey. Finally, Mr. Foster-Bey
asserts that his staffing levels were reduced more severely than those of the other SDO's and that
he was never informed of the decision to do so. The combined weight of these allegations is
sufficient to meet the minimal requirement of the fourth prong.

Accordingly, Mr. Foster-Bey has satisfied his burden of showing a *prima facie* case on
the question of race and age discrimination under Title VII and the ADEA.

### C.    Articulation of Legitimate, Non-Discriminatory Reasons

Once a plaintiff establishes a *prima facie* case of discrimination, the burden shifts to
employer to articulate a legitimate, non-discriminatory reason for the employment decision.
*Byrnie*, 243 F.3d at 102. The Second Circuit has held that "[t]he defendant's burden of production
also is not a demanding one; [Defendant] need only offer an explanation for the employment
decision." *Bickerstaff*, 196 F.3d at 446.

The USPS alleges legitimate non-discriminatory reasons for all of their actions, and
supports its allegations with affidavits of USPS personnel. It asserts that administrative leave is
"not uncommon" when there is a serious safety incident such as that involving the SPBS, Def.'s
Local Rule 9(c)(1) Statement at ¶20. The USPS also asserts that Mr. Foster-Bey's leave was
extended as long as it was because of alleged difficulty of coordinating the collection of
statements from the employees who were on the scene at the time of the incident, *id.* at ¶24,

15

alleged difficulty in reaching Mr. Foster-Bey by telephone, *id.* at ¶27, and alleged delay on Mr. Foster-Bey's part in providing a written statement. *Id.* at ¶30. Additionally, it notes that Mr. Foster-Bey is not similarly situated to either the other SDO's on the day shift, none of whom were accused of safety violations, or to Mr. Georgian, who reports to a different department and was the one in harm's way in the incident.

Regarding the post-leave complaints of Mr. Foster-Bey, the USPS alleges that staffing on his shift changed as a result of negotiations with the American Postal Workers Union and that while Mr. Foster-Bey has had different personnel since June 2001, he has always had the appropriate number of staff. *Id.* at ¶46-47. Defendant also asserts that Mr. Foster-Bey has not been excluded from any meetings since he returned from leave. *Id.* at ¶41. Finally, defendant asserts that all SDO's are required to have a maintenance technician restart the machine, not just Mr. Foster-Bey. Def.'s Mem. of Law in Supp. of Mot. for Summ. J. [Doc. #33], Ex. 3, Attach. B.

The Court finds that this statement of legitimate reasons for the USPS's actions satisfies Defendant's burden at this stage.

### D.    Pretext

Once both sides have met their respective initial burdens, the various presumptions disappear, and the plaintiff bears the ultimate burden of proving discrimination *vel non*. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000). On a motion for summary judgment, the Court does not act as the ultimate finder of fact. As the Second Circuit has emphasized, "if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper."

*Howley*, 217 F.3d at 151. Here, Mr. Foster-Bey has met this burden as to his claims of race and age discrimination.

The USPS claims that the placement of employees on administrative leave is "not uncommon" in situations involving safety infractions and the risk of physical harm, Def.'s Local Rule 9(c)(1) Statement [Doc. #34] at ¶20, but Mr. Foster-Bey has provided evidence that supports his view that such action is quite uncommon. Indeed, the USPS witnesses introduced no evidence about any other supervisor who had been placed on administrative leave for as long of a period pending an investigation. Plaintiff's supervisor Maria Prattson also testified that Mr. Foster-Bey is the first person under her supervision who had been placed on administrative leave in her six year tenure as MDO. Prattson Dep., Pl.'s Local Rule 9(c)(2) Statement, Ex. P, at 36-39. Rush Turner, a forty-year employee of the USPS, stated that he had never heard of an employee being placed on administrative leave prior to a thorough investigation. Turner Dep., *Id.*, Ex. R, at 51-54. Yet Mr. Foster-Bey was placed on administrative leave for nearly a month before any substantial investigation into the incident in question.

Additionally, plaintiff asserts that much about the way Mr. Foster-Bey was placed on administrative leave gives rise to doubts about the legitimacy of the USPS's stated reasons. For example, Plaintiff claims that USPS policy is that any maintenance technician who begins to work on an SPBS is required to maintain control of the machine such that it cannot be turned on by anyone else. *Id.* at ¶B.2. This suggests, as Mr. Foster-Bey argues, that even if the incident happened exactly the way Mr. Georgian claimed it did, Mr. Georgian would unquestionably be at least partially, if not completely, at fault. Yet, Mr. Georgian was not placed on administrative

leave, nor did he apparently suffer any consequences from his part in the incident.[15] Furthermore,

Mr. Foster-Bey claims that he was never informed why he had been placed on administrative

leave; nor was he questioned until almost one month after the alleged incident occurred. *Id.* at

¶B.6.

      Plaintiff thus at least raises a question of fact as to the credibility of Defendant's

explanation. This might be sufficient to meet his burden at this stage. As the Supreme Court

explained in *Reeves*:

> Proof that the defendant's explanation is unworthy of credence is simply one form of
> circumstantial evidence that is probative of intentional discrimination, and it may be quite
> persuasive. In appropriate circumstances, the trier of fact can reasonably infer from the
> falsity of the explanation that the employer is dissembling to cover up a discriminatory
> purpose . . . Moreover, once the employer's justification has been eliminated,
> discrimination may well be the most likely alternative explanation, especially since the
> employer is in the best position to put forth the actual reason for its decision.

*Reeves,* 530 U.S. at 147 (internal citations omitted). However, the Second Circuit has held, after

*Reeves*, that presenting evidence suggesting that the employer's justification is false is not

necessarily enough for a Plaintiff to survive a summary judgment motion. *Schnabel v. Abramson*,

---

[15]As noted above, the USPS does argue that neither Mr. Georgian nor the other SDO's are
"similarly situated" to Mr. Foster-Bey because Mr. Georgian is not a supervisor and the other
SDO's were not involved in a safety incident of this magnitude. Def.'s Mem. of Law in Supp. of
Mot. for Summ. J. [doc. #33] at 10-11. *See McGuinness v. Lincoln Hall*, 263 F.3d 49, 54 (2d Cir.
2001) (noting that "where a plaintiff seeks to establish the minimal prima facie case by making
reference to the disparate treatment of other employees, those employees must have a situation
sufficiently similar to plaintiff's to support at least a minimal inference that the difference of
treatment may be attributable to discrimination."). The Court does not believe it can resolve that
dispute in favor of the USPS at the summary judgment stage, as it is appropriately a question for
the trier of fact. *See Hargett v. Nat'l Westminster Bank, USA*, 78 F.3d 836, 839-40 (2d Cir. 1996)
(noting that the "similarly situated" issue is appropriate for jury resolution).

232 F.3d 83, 90 (2d Cir. 2000). The Court must not rely solely on Plaintiff's rebuttal of

Defendant's explanation but must "examin[e] the entire record to determine whether the plaintiff

could satisfy his 'ultimate burden of persuading the trier of fact that the defendant intentionally

discriminated against the plaintiff.'" *Id.* (quoting *Reeves*, 530 U.S. at 143).

      Here, Plaintiff has done little more than demonstrate that he falls into two protected

categories and that the credibility of Defendant's explanation is questionable; he also asserts that

the real reason for the adverse action is discrimination and he alleges disparate treatment by

Defendant as evidence of discriminatory animus. Given the stage of this proceeding, the

questions raised as to the credibility of Defendant's explanations and Plaintiff's allegations of

disparate treatment,[16] *e.g.*, Pl.'s Local Rule 9(c)(2) Statement [Doc. #36] at ¶B.11, the Court is

satisfied that a trier of fact could conclude that Defendant intentionally discriminated against Mr.

Foster-Bey. Of course, Defendant may be able to counter Mr. Foster-Bey's allegations,

particularly his assertions of disparate treatment, considerably more effectively at the trial. For

now, though, this Court cannot conclude that there is no dispute of material fact that would

justify entry of summary judgment on these claims.

      As to the allegations of post-leave diminutions of status, Mr. Foster-Bey seeks to refute

Defendant's stated reasons by asserting that his staff was reduced more significantly than any

---

[16]There was a debate at oral argument as to whether Mr. Foster-Bey is the only African-American SDO. His counsel indicated that he thought he was, and Defendant's counsel did not know whether he was or was not. However, Mr. Foster-Bey testified at his deposition that there are other African-American SDO's as well as other non-Caucasian SDO's. Foster-Bey Dep., Pl.'s Local Rule 9(c)(2) Statement [Doc. #36], Ex. O, p.212. Defendant will need to clarify this issue at trial.

other SDO's staff and that he was never informed about the changes in staffing procedures. Foster-Bey Dep., Pl.'s Local Rule 9(c)(2) Statement [Doc. #36], Ex. O, p.197. He additionally claims that the rule prohibiting SDO's from turning on the SPBS machine was enforced only against him. *Id.*, p.183-87. This is not particularly strong evidence and in and of itself would not be sufficient to meet Plaintiff's burden. However, the Court believes that taking all of Mr. Foster-Bey's evidence as a whole and giving him the benefit of all reasonable inferences, he has satisfied his burden of showing that there are sufficient issues of material fact at issue regarding the USPS's handling of this matter that summary judgment on his racial and age discrimination claims is inappropriate. As the Second Circuit has pointed out, "in an employment discrimination case when, as here, the employer's intent is at issue, the trial court must be especially cautious about granting summary judgment. We reverse a grant of summary judgment if there is any evidence in the record from which a jury could draw a reasonable inference in favor of the nonmoving party on a material fact, i.e., a fact that might affect the outcome of the suit." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) (internal citations omitted).

### IV.    Plaintiff's Retaliation Claim

Mr. Foster-Bey also asserts a claim of retaliation in violation of Title VII.  The standard for making out a *prima facie* case of retaliation is very similar to that required for race and age discrimination cited above. Plaintiff must prove that: (1) he was engaged in a protected activity; (2) his employer was aware of his participation in a protected activity; (3) he was subject to an adverse employment action; and (4) there is a nexus between the protected activity and the adverse action taken. *Tomko*, 66 F.3d at 1308; *see Van Zant v. KLM Royal Dutch Airlines*, 80

F.3d 708, 714 (2d Cir. 1996).

Mr. Foster-Bey filed EEO complaints against his supervisor, Maria Prattson, in the past, Am. Compl. [Doc. #13] Count Two ¶9, thus meeting the requirement that he had engaged in protected activity. Defendant was unquestionably aware of Mr. Foster-Bey's filing of the complaints, as it defended a lawsuit on the charges in this Court. *See Foster-Bey*, 2000 U.S. Dist. LEXIS 6634. And, as discussed above, Mr. Foster-Bey's placement on administrative leave could constitute adverse action. Therefore, Mr. Foster-Bey has satisfied the first three obligations of his *prima facie* case.

On the fourth prong, however, Mr. Foster-Bey fails to meet even the minimal burden imposed on him at this stage. The Second Circuit indicates that "[t]he causal connection may be shown (i) indirectly by showing that the adverse employment action followed closely in time after the protected activity, (ii) through other indirect evidence such as similar treatment of other employees who engaged in similar activity, or (iii) directly through evidence of retaliatory animus directed at the plaintiff." *Monahan v. United Techs. Corp., Pratt & Whitney Div.*, 1997 U.S. App. LEXIS 12278, at *4-*5 (2d Cir.1997). Mr. Foster-Bey makes none of these showings. The incident in question occurred two years after the most recent of his complaints. He brings no evidence of other employees who suffered similar harms after engaging in protected activities. And, he alleges no evidence whatsoever of a nexus between his prior complaints and the decision to place him on administrative leave.

Mr. Foster-Bey admitted during his deposition that no one made any reference whatsoever to his prior complaints in connection with the administrative leave action. Foster-Bey

Dep., Pl.'s Local Rule 9(c)(2) Statement [Doc. #36], Ex. O, p.135. Indeed, he admits that Maria

Prattson, the subject of his prior complaints, was not the decisionmaker regarding his placement

on administrative leave. Def.'s Local Rule 9(c)(1) Statement [Doc. #34], ¶19; Foster-Bey Dep.,

Pl.'s Local Rule 9(c)(2) Statement [Doc. #36], Ex. O, p.239. *Cf., Lynch v. Pathmark*

*Supermarkets*, 1998 U.S. App. LEXIS 16442, at *2-*3 (2d Cir. 1998); *McLee v. Chrysler Corp.*,

109 F.3d 130, 137 (2d Cir. 1997) (holding that the discrimination must be attributed to the

decisionmaker directly). As plaintiff acknowledged at oral argument, that decision was made by

the Manager, William Galligan, who was not the subject of the prior complaints. Rush Turner

also testified that Prattson merely carried out Galligan's directives. Turner Dep., Pl.'s Local Rule

9(c)(2) Statement [Doc. #36], Ex. R, p. 22.

 To find for Mr. Foster-Bey on the retaliation count on the basis of this undisputed

evidence would effectively be to say that merely engaging in protective activity and later

suffering an adverse action is enough to make out a valid claim for discrimination under Title

VII. Such an approach would improperly conflate the prongs of the retaliation standard. Proof of

an adverse action and of protected status does not, of itself, demonstrate a nexus between those

elements; Plaintiffs must advance at least some evidence, however minimal, suggesting that the

adverse action bears some causal connection to the protected status. That is an obligation that

Mr. Foster-Bey simply has not shouldered. Given the absence of any evidence of the necessary

connection, Mr. Foster-Bey has not established his *prima facie* case of retaliation and the USPS's

motion for summary judgment as to the retaliation count must, therefore, be granted.[17]


**CONCLUSION**

For the foregoing reasons, the Defendant's motion for summary judgment [doc. #32] is

GRANTED in part and DENIED in part.

IT IS SO ORDERED,

/s/        Mark R. Kravitz

U.S.D.J.

Dated at New Haven, Connecticut: November 17, 2003

---

[17]Even if Mr. Foster-Bey's evidence could be found to meet his *de minimis* burden in making the *prima facie* case for retaliation, he certainly has not provided sufficient evidence to meet his higher standard of rebutting Defendant's articulation of legitimate nonretaliatory reasons for their actions.