UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

-------------------------------------------------------X

GEORGE FOSTER-BEY
        Plaintiff,

      v.                                       Civil No. 3:02CV00618 (MRK)

JOHN E. POTTER,
POSTMASTER GENERAL,
UNITED STATES POSTAL SERVICE,
        Defendant

-------------------------------------------------------X

## JOINT TRIAL MEMORANDUM

1.    <u>TRIAL COUNSEL</u>

    Plaintiff's Counsel:

    W. Martyn Philpot, Jr., ct05747
    Marc L. Glenn ct21369
    409 Orange Street
    New Haven, CT 06511
    phone:  (203) 624-4666
    fax:  (203) 624-5050,
    e-mail:  Philpot.law@snet.net

    Defendant's Counsel:

    Anna V. Crawford ct 01394
    Special Assistant U.S. Attorney
    United States Postal Service (USPS)
    Northeast Area Law Department
    8 Griffin Road North
    Windsor, CT 06006-0170
    phone:  (860) 285-7309
    fax:  (860) 285-7397
    e-mail:  Anna.V.Crawford@usps.gov

Douglas P. Morabito
Assistant U.S. Attorney
57 Church Street, 23rd Floor
P.O. Box 1824
New Haven, CT 06508-1824
phone:  (203) 821-3810
fax:  (203) 773-5373
e-mail: Douglas.Morabito@usdoj.gov

2.    <u>JURISDICTION</u>

Plaintiff's Statement of Jurisdiction

Jurisdiction in this Court is invoked under the provisions of the Judicial Code at 28 U.S.C. Sections 1331 and 1343, the Civil Rights Act of 1866, 1964 and 1991, as amended pursuant to § 2000e <u>et</u> <u>seq.</u> of Title 42 of the United States Code.

3.    <u>JURY TRIAL</u> – This case is to be tried by a jury.

4.    <u>LENGTH OF TRIAL</u> –

Plaintiff's counsel is of the view that this matter will take between 4 to 6 days to try in its entirety.

5.    <u>FURTHER PROCEEDINGS</u> - Possibly Defendant's motion in limine regarding proposed Plaintiff's expert, and witnesses who may lack personal knowledge of the incidents in question.

6.    <u>NATURE OF CASE</u>

<u>Defendant's statement</u> – Plaintiff claims violations of Title VII of the Civil Rights Act of 1964 as amended (Title VII), 42 U.S.C. § 2000e, and the Age Discrimination in Employment Act (ADEA) in his federal postal employment.  The specific claims remaining for trial are whether Plaintiff's postal managers discriminated against him based on his race and age when they placed Plaintiff on leave pending an investigation of employee reports that indicated Plaintiff turned on a mail sorting machine when he knew a mechanic was working on it. In addition, Plaintiff claims discrimination in that after he returned from leave, his staff was reduced, and he was restricted in his operation of the machine while other supervisors were not.

Plaintiff seeks to recover compensatory damages and attorney fees in this matter.

2

Defendant denies that race or age discrimination motivated any of his agents' actions in this matter.

Plaintiff's Statement:

The Plaintiff, George Foster-Bey, has been employed with the Defendant since 1984. Since 1985 he has held the position of Supervisor of Distribution Operations for the Defendant's Weston Street, Hartford, CT facility. On February 23, 2001 Plaintiff received a letter from his supervisor, Maria Prattson, that he was being placed on administrative leave pending an investigation of an alleged safety infraction. The letter failed to indicate the specific grounds, conduct or procedure the Plaintiff allegedly violated.

Allegedly, a parcel bundle machine was operating while under repair by a Maintenance Technician, which constitutes a safety violation. The investigation also revealed that the safety lock on the parcel bundle machine was malfunctioning. Furthermore, the investigation cited that other employees were not blameless and that the Plaintiff was not aware that the parcel bundle machine was being repaired. Lastly, pursuant to USPS policy, repair safety precautions rest, in large part, with the maintenance technician.

Plaintiff's action proceeds pursuant to 42 U.S.C. § 2000e et seq. (Title VII) as it relates to race/disparate treatment; and 29 U.S.C. § 621 et seq., Age Discrimination Employment Act (ADEA) as the Plaintiff was sixty-three (63) years old at the time of the adverse action.

With respect to the relief sought, the Plaintiff seeks compensatory damages.

7.    TRIAL BY MAGISTRATE JUDGE - Counsel have not agree to a trial by a Magistrate Judge

8.    EVIDENCE

8(a).    Defendant's Witnesses

Unless noted differently, all witnesses work at the USPS, Hartford Processing and Distribution Center (the "Plant"), 141 Weston Street, Hartford, CT. Each witness is expected to testify for approximately 30-40 minutes on direct, except for William Galligan, Richard Uluski and Stanley Strange who may take approximately one hour each.

Witnesses That Will Testify

1.  Deborah Ambrogio, Manager In-Plant Support, will testify concerning the claim of a reduction in staff.

2.  James Ambrogio, former Manager, Labor Relations, will testify concerning administrative leave and other miscellaneous personnel matters.

    **Plaintiff objects if he was not manager at the time of leave. Thus, he has no personal knowledge of incident and his testimony is irrelevant. FRE 401, 402.**

3.  Michael Fennessy, Manager, Maintenance Operations, will testify concerning the SPBS and the mechanic's role with regard to the machine.

    **Plaintiff objects as this witness was not the Head of Maintenance Operations at the time of the incident. As such, there is no personal knowledge. FRE 401, 402.**

4.  William Galligan, Plant Manager, will testify concerning the decision to place Plaintiff on leave, his instructions to the investigators, and his actions with regard to the investigation report.

5.  John Georgian, Maintenance Technician, Tour 1, will testify about what occurred on the night of the incident and afterwards.

6.  Betty Palmer, Supervisor, Maintenance Operations, Tour 1, will testify about her actions in regards to the mechanic's report of the incident.

7.  Maria Prattson, Manager, Distribution Operations, Tour 3, will testify regarding her role after the incident.

8.  John Sirotnak, Acting Manager, Safety and Health, formerly the Safety Specialist at the Plant, will testify concerning the conduct of the investigation.

9.  Stanley Strange, Former Manager, Maintenance Operations, 21 Riverdale Rd., Westerly RI 02891-2825, will testify concerning the conduct of the investigation.

10. Larry Teague, Lead MDO, will testify concerning supervisors' role with regard to the SPBS, and who were the other SPBS supervisors at the time **Plaintiff objects as he was not on duty or the lead MDO at time of incident. FRE 401, 402.**

4

11.    Richard Uluski, former Lead Manager, Distribution Operations, currently Lead Plant Mgr, Springfield MA, will testify concerning his role in the investigation, his conclusions, and actions taken.

<u>Witnesses That Will Testify If The Need Arises</u>

1.    Gloria Grady, clerk, regarding her observations at the time of the incident. **Plaintiff objects as this is not trial by ambush. If the above-referenced witness will be a rebuttal witness it should be indicated as such. FRE 403/Unfair Prejudice.**

2.    Linda Greaney, EEO Appeals, Windsor, CT, records custodian. **Plaintiff objects as proffered testimony is irrelevant. FRE 401, 402.**

3.    Barbara Hesse, clerk, regarding her observations at the time of the incident. **Plaintiff objects as this is not trial by ambush. If the above-referenced witness will be a rebuttal witness it should be indicated as such. FRE 403/Unfair Prejudice.**

4.    Jim Johnson Jr., former Manager, Distribution Operations, Tour 3, regarding his role after the incident.

5.    Yaw Kwarteng, former clerk, regarding his observations at the time of the incident. **Plaintiff objects as this is not trial by ambush. If the above-referenced witness will be a rebuttal witness it should be indicated as such. FRE 403/Unfair Prejudice.**

6.    James Lowderback, clerk, regarding his observations at the time of the incident. **Plaintiff objects as this is not trial by ambush. If the above-referenced witness will be a rebuttal witness it should be indicated as such. FRE 403/Unfair Prejudice.**

7.    Richard Koreiwo, CT Manager TACS operations, regarding night differential pay and rate **Plaintiff objects as this is irrelevant and unnecessarily cumulative. FRE 403.**

8.    Roger Walicki, Supervisor, Distribution Operations, Tour 1, regarding the operation of the small parcel bundle sorter machine. **Plaintiff objects as this is irrelevant and unnecessarily cumulative. FRE 403.**

9.  Diane Caulbert, Supervisor, Distribution Operations, Tour 2, regarding the operation of the small parcel bundle sorter machine.

   **Plaintiff objects as this is irrelevant and unnecessarily cumulative. FRE 403.**

Expert Witnesses

Defendant - None

Plaintiff's – Sherri Beaulieu.  To the extent Ms. Beaulieu will render an opinion as to the causation of plaintiff's emotional distress.  Witness was disclosed through the standard disclosure requests pursuant to Fed. R. Civ. P. 26 et seq.

None

Plaintiff's Witnesses

1.  George Foster-Bey, 2 Ridgeview Drive, Bloomfield, CT.  Mr. Foster-Bey will testify as to the nature of his training and employment at the Defendant company.  He will testify as to his years of service there, and the events preceding, contemporaneous with, and subsequent to the harassment he experienced at the Defendant's hands.  Mr. Foster-Bey is also expected to testify as to the nature of the treatment he sought subsequent to his harassment, his efforts to mitigate his damages, and the nature of his injuries then and now as they relate to his experiences of harassment at the Postal Service.  The Plaintiff will also testify about the nature of the discrimination, disparate treatment and harassment he was subjected to while employed at the Postal Service.

2.  Plaintiff's wife, Carlene Foster-Bey 2 Ridgeview Drive, Bloomfield, CT. Ms. Foster-Bey will testify as to the devastating affect the discrimination has had upon her husband.  She will testify as to the type of person he was physically, psychologically, emotionally and spiritually prior to the alleged discrimination, and how he evolved while it was occurring.  Finally, she will testify as to the present behavioral/sociological and psychological well-being, or lack thereof, of her husband.

3.  Sherri Beaulien, PATH Outpatient Services, St. Francis Hospital & Medical Center, Mt. Sinai Campus, 675 Tower Avenue, Hartford, CT. Ms. Beaulieu, a licensed Social Worker and Plaintiff's expert will testify as to her diagnosis and prognosis as a result of being discriminated against within the workplace at the defendant company.  She will also opine that

6

the major depression and post traumatic stress disorder Plaintiff currently suffers from is as a direct result of the alleged discrimination he suffered while employed at the Postal Service.  Ms. Beaulieu will also testify as to the nature of the treatment that the Plaintiff has received as a result of his diagnosis.

**Defendant objects to any opinion testimony offered by this witness due to Plaintiff's failure to comply with FRCP 26 (a) 2 with regard to expert disclosures during discovery.  In addition, Defendant would be prejudiced by any expert testimony at this time.**

5.      Maria Prattson – Ms. Prattson is a Supervisor of Distribution Operations. She is the Plaintiff's immediate supervisor.  Ms. Prattson will testify as to her investigation of the February 23, 2001 incident concerning the SPDM machine.  Moreover, Prattson also authored the letter placing the Plaintiff on administrative leave.

6.      Richard Uluski. 25 Frances Court, Chesire, CT.  Mr. Uluski will testify concerning his investigation and conclusions as to culpability regarding the alleged safety infraction on February 21, 2001.

7.      Robert Mayer., 24 Pond Way, North Windham, CT.  Mr. Mayer was the safety captain on duty on February 21, 2001.  Mr. Mayer will testify that he conducted a safety inspection at the time the SPBS was turned on and did see Mr. Georgian working in the SPBS.  Moreover, Mr. Mayer will testify that Georgian failed to comply with applicable safety regulations when repairing the SPBS on February 21, 2001.

8.      Rush Turner (Ret.) 742 Kennedy Road, Windsor, CT.  Mr. Turner is a retired SDO.  Mr. Turner will testify concerning the USPS policy and protocol regarding safety; the rarity of employing administrative leave as a disciplinary remedy as well as its impact on the perception of an SDO's performance by his/her peers and subordinates.

10.     Muthappa Ballymanda, 20 Peddlar Drive, Windsor, CT. Mr. Ballymanda is currently a Supervisor of Distribution Operations ("SDO"). Mr. Ballymanda will render testimony concerning infrequent usage of administrative leave as a disciplinary remedy, particularly for supervisors. Additionally, Mr. Ballymanda will testify to concerning the diminution in status of a SDO upon placement on administrative leave.

Plaintiff's Witnesses That Will Testify If The Need Arises:

The following witnesses will render testimony relative to the alleged diminution of status subsequent to plaintiff's placement on administrative leave.

10.    Harold Richards (retired), 23 Crystal Lane, Bloomfield, CT 06002. **Defendant objects to the witness because the witness retired in June 2000 and would have no personal knowledge of the events of February 2001.**

11.    Geraldine Anderson (retired), 11 Carpenter Lane, Bloomfield, CT  06002. **Defendant objects to the witness because the witness retired in 1999 and would have no personal knowledge of the events of February 2001.**

12.    Michael Walsh, U.S. Postal Service, Springfield, MA.

13.    Michael Birchus, U.S. Postal Service, 141 Weston Street, Hartford, CT 06101.

14.    Willie Nixon, Maintenance Unit, U.S. Postal Service, 141 Weston Street, Hartford, CT 06101.

15.    Andre Gayle, U.S. Postal Service, Maintenance, 141 Weston Street, Hartford, CT 06101.

16.    William Hill (retired), address unknown.

**Defendant objects to the witness because the witness retired in 1999 and would have no personal knowledge of the events of February 2001.**

17.    John Randolph (retired), Springfield, MA. **Defendant objects to the witness because the witness retired in 1999 and would have no personal knowledge of the events of February 2001.**

18.    Kenneth Pennington (retired), Hartford, CT. **Defendant objects to the witness because the witness retired in September 2000 and would have no personal knowledge of the events of February 2001.**

19.    Shams Ahmed, Supervisor, U.S. Postal Service, 141 Weston Street, Hartford, CT  06101.

20.    Don Harrison, Supervisor, U.S. Postal Service, Bradley AMF, Windsor Locks, CT (home address:  26 Habitat Lane, Bloomfield, CT 06002).

       **Defendant objects to the witness because the witness was reassigned to his present position at Bradley airport in 1996 and**

**would have no personal knowledge of the events of February 2001 at the Hartford Plant.**

21.   Richard Blizzard, Hartford, CT.

**Defendant objects to the witness because the witness resigned in February  2000 and would have no personal knowledge of the events of February 2001.**

22.   Edgar Acquino, Supervisor, U.S. Postal Service, Bradley AMF, Windsor Locks, CT.
**Defendant objects to the witness who was not disclosed in discovery, or in any mandatory disclosures.**

23.   Tom Ferris, U.S. Postal Service, 141 Weston Street, Hartford, CT 06101.
**Defendant objects to the witness who was not disclosed in discovery, or in any mandatory disclosures.**

24.   Jose Roman, U.S. Postal Service, 141 Weston Street, Hartford, CT 06101.
**Defendant objects to the witness who was not disclosed in discovery, or in any mandatory disclosures.**

25.   Fred Rabb, U.S. Postal Service, 141 Weston Street, Hartford, CT 06101.
**Defendant objects to the witness who was not disclosed in discovery, or in any mandatory disclosures.**

26.   Ann Bennett, U.S. Postal Service, 141 Weston Street, Hartford, CT 06101.
**Defendant objects to the witness who was not disclosed in discovery, or in any mandatory disclosures.**

**27.**   Christopher Han, U.S. Postal Service, 141 Weston Street, Hartford, CT 06101.
**Defendant objects to the witness who was not disclosed in discovery, or in any mandatory disclosures.**

* Plaintiff reserves the right to call witnesses as disclosed by the defendant during his case-in-chief and/or rebuttal.


8(b).   <u>Defendant's Exhibits</u>

9

501.    February 22, 2001 statement of John Georgian re: safety incident SPBS

      **Objection:**  FRE 403/Duplicative of testimony.

502.    February 22, 2001 statement signed by four SPBS clerks and a technician.
      **Objection:**  Hearsay FRE 803

503.    February 23, 2001 letter from Maria Prattson to George Foster-Bey

504.    March 9, 2001 letter from Richard Uluski to George Foster-Bey

505.    March 23, 2001 letter from Foster-Bey to Stanley Strange re: statement

506.    March 23, 2001 report of SPBM incident investigation with attached declarations:

      506A.  Declaration of Robert Turner, Clerk, Tour 1, March 7, 2001
            **Objection:**  Hearsay FRE 803
            **Defendant's response:  Exhibits 506A through H were part of the report, exhibit 506, submitted to Richard Uluski, and as such are not offered for a hearsay purpose, but rather to show that the statements were made, and submitted and considered by Uluski in reaching his conclusions about the incident in question.**

      506B.  Declaration of Gloria Grady, Clerk, Tour 1, March 7, 2001
            **Objection:**  Hearsay FRE 803

      506C.  Declaration of James Lowderback, Clerk, Tour 1, March 7, 2001

            **Objection:**  Hearsay FRE 803

      506D.  Declaration of Yaw Kwarteng, Clerk, Tour 1, March 7, 2001
            **Objection:**  Hearsay FRE 803

      506E.  Declaration of Barbara Hesse, Clerk, Tour 1, March 7, 2001
            **Objection:**  Hearsay FRE 803

      506F.  Declaration of George Foster-Bey (unsigned)

      506H.  Declaration of John Georgian, MPE Mechanic, T-1, March 7, 2001
      **Objection**:    Duplicative

507.    Undated memorandum re: incident, activating switches, signed "Stan"
      **Objection:**  Hearsay FRE 803

**Defendant's response:  the document is not being offered to prove the truth of the matter asserted, but to show that, if authenticated by Stanley Strange, the statement was made by him to maintenance personnel regarding the incident.**

508.    April 11, 2001 Safety Talk re: Use of E-Stops by Technicians

509.    Administrative EEO complaint 1B-061-0051-01, May 1, 2001
**Objection:  To the extent the exhibit references claim(s) of retaliation it is
  Irrelevant.  FRE 403.**

**Defendant would offer the exhibit for the non-hearsay purpose of showing
the Plaintiff made an EEO complaint, and when it was made.  Defendant
agrees to redact the reference to retaliation.**

510.    September 6, 2001 letter from John Georgian to William Imbier
**Objection:    FRE 403/Unnecessarily Cumulative.**

511 A-B.

    Copy of photo of computer control monitor and notices placed in front of
    the monitor.
    **Objection:    FRE 403/Unfair Prejudice.  Not sufficiently probative to
    overcome prejudice – photos do not reflect how monitor appeared
    on date of incident**.

512 A-B.

    Copy of photo of the main poser cabinet and computer monitor

513 A-G.

    Photographs of SPBS machine

514.    EEO Case file 1B-061-0051-01
    **Objection**:    **FRE 402, 403/Relevance.**

515.    George Foster-Bey's Official Personnel File ("OPF")
    **Objection**:    FRE 403/Relevance/overly burdensome/unnecessarily
                cumulative.

516.    ELM Section 434.2 Night Eligibility

517.   Deposition transcript of Muthappa Ballymanda, February 19, 2003

518.   Deposition transcript of George Foster-Bey, December 2, 2002 and

519.   Deposition transcript of George Foster-Bey, January 29, 2003

520.   Deposition transcript of Robert Mayer, January 29, 2003

521.   Deposition transcript of Rush Turner, March 3, 2003
       **Objection**: **Proffered exhibits 517-521 should be limited to impeachment purposes only.**

522.   Video of SPBS machine
       **Objection**:   **FRE 403/Proffered exhibit.  Not been disclosed to date to plaintiff.**

Defendant reserves the right to offer into evidence any of Plaintiff's proposed exhibits.

Plaintiff's Exhibits

1.   George Foster-Bey's Official Personnel File ("OPF").  Plaintiff's personnel file will indicate the various jobs he held throughout the course of his employment with the Postal Service, his various supervisors, his performance in various positions and his rate of pay throughout his tenure with the Postal Service.

2.   George Foster-Bey's Joint Income Tax Returns.  This document depicts the income Plaintiff and his family managed to earn following the incident complained of.

     **Defendant objects to these exhibits on relevance grounds.  FRE 401.**

3.   February 23, 2001 correspondence from Maria Prattson placing Plaintiff on administrative leave.

4.   Letter dated March 10, 2001 from Plaintiff to Prattson.

5.   Sherri Beaulien's Curriculum Vitae.  This document will reflect Ms. Beaulien's expertise in the field upon which she is expected to testify.

12

**Defendant objects to these exhibits on relevance and hearsay grounds.  FRE 401, 801, 803.  See objection to Plaintiff's expert witness stated above.**

6.    Excerpt from Publication 129 concerning Lock-Out procedure re:  SPBM machine.

**Defendant objects to these exhibits on relevance and hearsay grounds.  FRE 401, 801**

7.    Correspondence dated March 9, 2001 from Richard Uluski to Plaintiff.

8.    Excerpt from employment and labor manual June 14, 1999 ' 365.323 et seq.

**Defendant objects to these exhibits on relevance grounds.  FRE 401.**

9.    March 8, 2001 letter from co-workers of Plaintiff addressed to Jon Steele Vice President of Operations.

**Defendant objects to these exhibits on relevance and hearsay grounds.  FRE 401, 803.**

10.    Email authored by Stan concerning February 23, 2001 incident.

**Objection. Hearsay FRE 801.**

11.    April 11, 2001 correspondence by Stan Strange to all supervisors of Maintenance Operations.

12.    Declaration of Robert W. Turner, clerk, regarding February 23, 2001 incident.

**Objection. Hearsay. FRE 801.**

13.    September 6, 2001 correspondence by John Georgian.

**Defendant objects to these exhibits on relevance and hearsay grounds.  FRE 401, 801**

14. September 17, 2001 log entry of William Imbier regarding interview with John Georgian.

   **Defendant objects to these exhibits on relevance and hearsay grounds.  FRE 401, 801**

15. Statement from Rory Hall regarding February 23, 201 incident.
   **Defendant objects to the exhibit on hearsay grounds.  FRE  801**

16. Medical records from PATH Out Patient Services regarding counseling of Plaintiff.

   **Defendant objects to these exhibits on relevance and hearsay grounds.  FRE 401, 801, 803.**

17. Defendant's responses to Plaintiff's First Set of Interrogatories and Request for Production.

18. Defendant's Responses to Plaintiff's Second Request for Production.

19. Deposition transcript of Maria Prattson.

20. Deposition transcript of Richard Uluski.

21. Deposition transcript of Robert Mayer.

22. Deposition transcript of Muthappa Ballymanda.

23. Deposition transcript of Rush Turner.

* Plaintiff reserves the right to introduce those exhibits as disclosed by the defendant during his case-in-chief and/or rebuttal.

8(c).   <u>Deposition Testimony</u>

   Witnesses expected to testify by deposition at trial .

   Defendant will need to take a trial deposition of Stanley Strange who is scheduled to be away during the trial dates.

**Objection:   Plaintiff intends to issue a subpoena upon Mr. Strange regarding his**

**testimony as it is critical that he appear and testify before the trier of fact particularly in light of his crucial role in the investigation of the plaintiff.**

9.    STIPULATIONS AND PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

**PARTIES' STIPULATION OF UNCONTESTED FACTS**

1.    At all time relevant to these proceedings Plaintiff, George Foster-Bey, was employed by Defendant, United States Postal Service, as a Supervisor, Distribution Operations on the evening shift, or Tour 3, 4:00 pm to 12am at the Hartford, Connecticut Processing and Distribution Center (the "Plant") at 141 Weston Street in Hartford, Connecticut.

2.    Plaintiff is African-American and he was 63 years old at the time of the incident in question.

3.    John Georgian, is a Tour 1 Maintenance Technician at the Plant.  He works from 11:00 p.m. to 7:30 a.m.

4.    Mr. Georgian is Caucasian and he was 39 years old as of the date of the incident in question.

5.    Among Mr. Georgian's duties is to maintain, inspect and repair mail processing equipment, including the small parcel bundle sorter machine (SPBS).  The SPBS machine processes bundled mail and packages.  The machine is approximately 120 feet long and is configured in a straight line.

6.    At one end of the machine is a control panel, and at the other end is a motor.  Mail is deposited onto the machine from a chute near the

control end of the machine, and is carried by a conveyor belt along the length of the machine in divided sections called carrier cells. A large transport chain drives the conveyor belt, and this moving part is exposed at the motor end inside the motor cabinet and behind various access panels. Clerks sit at raised consoles near the control panel end of the machine and enter zip code data on keyboards which causes the mail to drop out of the carrier cells into various bins placed along the sides of the machines.

7.    The machine has various safety devices which prevent the machine from restarting, including emergency stop buttons, and built-in safety features such as, for example, "interlock" switches which became activated once an access panel is removed.

8.    The three step sequence for restarting the machine is: press the red re-set button on the main power cabinet; using a specific key, insert key into reset slot and turn, which should cause 3 green lights to come on. When all 3 green lights are lit, the start key located on the opposite side of the power cabinet can be rotated.

9.    Audio and visual alarms alert personnel that the system drive or transport chain is about to move.

10.   Mail processing supervisors and maintenance personnel are required to make sure all personnel are clear of the machine's moving parts

16

before it is restarted, and to not restart the machine until maintenance completes an operation.

11.    On February 21, 2001, maintenance mechanic, John Georgian, reported to his supervisor that Plaintiff had turned on a machine while he was working on it at approximately 11:40 p.m.

12.    Four clerks provided statements of what they observed that night.

13.    Plaintiff was scheduled to take annual leave on Thursday, February 22 through Saturday, February 24, 2001, and he has Sundays and Mondays off, so he was not scheduled to return to work until Tuesday, February 27, 2001.  Plaintiff's Manager, Maria Prattson, wrote Plaintiff a letter dated February 23, 2001 advising him that he would be in an administrative leave pay status until further notice.  "Administrative leave" is paid leave.

14.    At the request of Rick Uluski, Lead Plant Manager, Distribution Operations, on or about February 23, 2001, Manager, Maintenance Operations, Stanley Strange, and the Plant Safety Specialist, John Sirotnak, began an investigation of the incident.

15.    On March 7, 2001, the four clerks provided signed statements to the investigators.

16.    On March 9, 2001, Uluski sent Plaintiff  a letter because he could not reach him.

17

17. Plaintiff came in for an interview sometime after March 13, 2001, and provided a written statement on or about March 23, 2001.

18. On March 23, 2001, the investigators completed their report and gave it to Plant Manager, William Galligan.

19. Plaintiff received full pay and benefits from February 22 to March 26, 2001. Because he was on leave, he did not receive a night differential in the total amount of $247.92.

## STIPULATED CONTESTED ISSUES OF FACT AND LAW

1. Whether Plaintiff suffered any adverse action.

   **Plaintiff's Objection: The Court has already determined this issue.**

2. Whether Postal management's real reason for placing Plaintiff on leave was because of Plaintiff's race.

3. Whether Postal management's real reason for placing Plaintiff on leave was because of Plaintiff's age.

4. Whether the fact that the investigation took one month was because of Plaintiff's race.

5. Whether the fact that the investigation took one month was because of Plaintiff's age.

6. Whether Plaintiff suffered a reduction in staff after the incident.

7. Whether Postal management reduced Plaintiff's staff because of Plaintiff's race.

8.      Whether Postal management reduced Plaintiff's staff because of Plaintiff's age.

9.      Whether after the incident, Plaintiff was treated differently than other Small Parcel Bundle Sorter (SPBS) Supervisors in the operation of the SPBS.

10.     Whether this different treatment was due to Plaintiff's race.

11.     Whether this different treatment was due to Plaintiff's age.

**Contested Issues of Law**

1.      Whether Plaintiff was discriminated against on the basis of race in violation of Title VII.

2.      Whether Plaintiff was discriminated against on the basis of age in violation of ADEA.


9(b)(1)      <u>Proposed Voir Dire Questions (to be attached)</u>

9(b)(2)      <u>Proposed Jury Instructions (to be attached)</u>

9(b)(3)      <u>Proposed Verdict Form  (to be attached)</u>

10.          <u>Anticipated Evidentiary Problems</u>


**<u>Plaintiff's Proposed Voir Dire Questions</u>**

1.      Do any of you know any of the parties involved in the instant matter, anyone who works for the Postal Service, any of the attorneys representing the parties and if so, would this knowledge affect your ability

to serve as a fair and impartial juror in this matter?

2.    Do any of you know of or ever heard of any of the witnesses who are expected to testify in the upcoming trial of this case? If your answer is in the affirmative, would your familiarity with any of the witnesses affect your ability to be a fair and impartial juror in this matter?

3.    There has been a great deal of talk in the media of late about frivolous lawsuits and possible caps on claims brought by plaintiffs in our courts. Whether or not you agree with this proposition, will you be able to follow the law as provided to you by this Court regardless of your own feelings as to whether or not there are too many frivolous lawsuits in Courts and/or whether or not damages should be capped in certain types of cases?

4.    Have you or a member of your family ever been accused of discrimination?
      If so, will this experience in any way affect your ability to objectively view the evidence presented in this case?

5.    Has the company that you work for presently or a former employer ever been accused and/or sued for discrimination? Will this fact, in and of itself, impair and/or affect your ability to be a fair and impartial juror in the instant matter?

6.    This case involves alleged discrimination of the plaintiff. Will that fact, in any way, even before you hear the law as it relates to an employer's responsibility for the acts of its employees, make it exceedingly difficult for

20

you to hold the U.S. Postal Service alone responsible for any injuries and/or related damages Mr. Foster-Bey has sustained as a result of being discriminated against?

7.    If you find that Mr. Foster-Bey has proven his case by a preponderance of the evidence, will you have any hesitation in awarding him just, fair and reasonable damages in accordance with the law as I so instruct?

8.    Often times, people have indicated difficulty in awarding money damages for such things as pain and suffering, even when they have found that such damages are justly deserved.  If you find that the plaintiff has proven his damages by a preponderance of the evidence, will you be reluctant to award just, fair and reasonable damages for such intangible things as pain and suffering, humiliation, embarrassment and loss of enjoyment of life?

9.    Evidence of damages in this case will involve emotional distress as a result of the alleged discrimination.  Many people are skeptical of this type of illness or injury.  If plaintiff proves his injuries by a preponderance of the evidence, and that they are related to the trauma he experienced at the Postal Service, will you have any hesitation whatsoever in awarding reasonable damages for these types of injuries?

**Plaintiff George Foster-Bey's Proposed Jury Instructions**

The plaintiff, George Foster-Bey, hereby respectfully requests the following jury

21

charge be given to the jury in the instant matter, subject to any further instructions and/or rulings by the Court with respect to the evidence admitted and/or the general charge which is to be rendered by the Court in the instant matter.

**Request to Charge No. 1.    Defining Title VII**

42 U.S.C. § 2000e-2(a), also known as Title VII, provides that:

> It shall be an unlawful employment practice for an employer (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment because of such individual's race, color, religion, sex or national origin; or (2) to limit, segregate or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee because of such individual=s race, color, religion, sex or national origin.

42 U.S. § 2000e-2(a).

**Request To Charge No. 2 Prima Facie Case**

The essential elements of a prima facie case are: (1) plaintiff is a member of a protected class; (2) plaintiff performed his/her job satisfactorily; (3) plaintiff suffered an adverse employment action; (4) the circumstances give rise to an inference of discrimination. See *Saint Mary's Honor Center v. Hicks* 509 U.S. 502, 506 (1993).

**Requested Charge No. 3 DisparateTreatment**

The plaintiff must prove that an adverse employment action was taken because of his/her race by showing that race played a motivating role in, or contributed to, an employer=s decision.

**Request to Charge No. 4 Discriminatory Animus-Different Treatment**

Mr. Foster-Bey may raise an inference of discriminatory animus by offering evidence comparing himself to similarly-situated individuals who are not a member of his protected class, who are treated more favorably. See *Morris v. Harris Trust and Savings Bank* 867F.2d 1023, 1026 (7th Cir. 1989);

Mr. Foster-Bey must show that he shared sufficient employment characteristics with that comparator so that they can be considered similarly-situated. Such employee must be similarly-situated in all material respects not all respects. Plaintiff is not obligated to show disparate treatment of an identically situated employee. *McGuinness v. Lincoln Hall* 263F.3d 49, 53-54 (2nd Cir. 2001).

**Request To Charge No. 5 Adverse Action**

An adverse employment action is one that results in discrimination against an individual with respect to his compensation, terms, conditions or privileges of employment or that limits, segregates, or classifies employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee.  See Title VII of the Civil Rights Act of 1964, has amended, ' 703 (a), 42 U.S.C. ' 2000 e-2(a)(1997).

**Request To Charge No. 6 Pretext**

If you find that the stated reasons given by the defendant for the adverse employment action are inconsistent or implausible or that defendants substantially deviated from its own practices or policies, then you may conclude that the offered explanation is a mere pretext, excuse, sham, or cover-up for discrimination.  If you find the pretext you may also infer that race was a motivating factor in the employment decisions, though you are not required to draw such an inference. *Turner v. American Red Cross Tissue Services*, 2001 U.S. App.Lexis 4359

23

(10th Cir. 2001)(unpublished).

Pretext may shown by such weaknesses,
implausibilities, inconsistencies, incoherencies
or contradictions in defendants proffered reasons
for its actions that a reasonable person could rationally
find them unworthy of credence and
hence infer that the defendant did not
act for the asserted non-discriminatory reasons.
*Reeves v. Sanderson Plumbing Products Inc.*
530 U.S. 133 (2000).

**Request to Charge No. 7 Presentation of Proof**

Plaintiff has the initial burden of proving by a
preponderance of the evidence a prima facie case
of discrimination if Mr. Foster-Bey succeeds in
proving a prima facie case, a rebuttable presumption
of discrimination arises and the burden shifts to the
defendant to articulate a legitimate non-discriminatory
reason for the employment action.  If the defendant
articulates a legitimate non-discriminatory reason for
its actions to presumption of discrimination is rebutted.
Plaintiffs must then show that it is more likely
than not that the employers proffered reason
is in reality a pretext for unlawful discrimination .
*Texas Department of Community Affairs v. Burdine*
450 U.S. 248, 252-53 (1981).

**Requested Charge No. 8 Coverage/ADEA and Scope**

The Age Discrimination and Employment Act
Prohibits discrimination against employees
who are at least forty years old.  The ADEA
provides that it is unlawful for an employer:
(1) to fail or refuse to hire or discharge any
individual with respect to his or her
compensation, terms, conditions, or privileges
of employment because of such individuals age;
(2) to limit, segregate or classify his or her
employees in any way which would deprive
or tend to deprive any individual of employment
opportunities or otherwise adversely affect his
or (3)her status as an employee because of such

24

individuals age; or to reduce the wage rate of
any employee in order to comply with the
ADEA.  29 U.S. C." 622, 623 (a).

**Defendant objects to this instruction because there is no right to a jury trial on the issue of age discrimination. See e.g., Lamb v. Henderson, 1999 U.S. Dist. LEXIS 12144 (S.D.N.Y. 1999).**

### Request to Charge No. 9 Prima Facie Case

Under the ADEA, Mr. Foster-Bey must establish
a prima facie case of unlawful discrimination showing
that: (1) he is a member of a protected class i.e. that he
is forty or older; (2) perform the job satisfactorily; (3)
suffered an adverse employment action; 4) under
circumstances given rise to an inference of
discrimination.

**Defendant objects to this instruction because there is no right to a jury trial on the issue of age discrimination. See e.g., Lamb v. Henderson, 1999 U.S. Dist. LEXIS 12144 (S.D.N.Y. 1999).**

25

**Request to Charge No. 10 Spoilation**

Spoilation is the destruction or significant alteration of evidence, or the failure to preserve property for another use as evidence in pending or reasonably foreseeable litigation. See *West v. Goodyear Tire & Rubber Co.,* 167 F.3d 776, 779 (2d Cir. 1999). The spoliation of evidence germane to proof of an issue at trial can support an inference that the evidence would have been unfavorable to the party responsible for its destruction. See *Kronisch v. United States,* 150 F.3d 112, 126 (2d Cir. 1998). Mr. Foster Bey claims the written statement of Robert Mayer exonerating him of allegations relative to a safety infraction has not/cannot be produced. To grant Foster-Bey an adverse inference, he must establish that the USPS had an obligation to preserve it at the time it was destroyed. Such an obligation usually arises when a party has notice that the evidence is relevant to litigation or may be relevant to future litigation. The burden falls to Foster-Bey to produce evidence suggesting that a document or documents relevant to substantiating his claim would have been included in the missing documents. See *Byrnie v. Town of Cromwell*, 243 F.3d 93,108 (2d Cir. 2001).

You have heard testimony about records that have not been produced. Counsel for Plaintiff has argued that this evidence was in Defendant's control and would have proven facts material to the matter in controversy.

If you find that Defendant could have produced these records, and that the records were within their control, and that these records would have been material in deciding facts in dispute in this case, then you are permitted, but not required, to infer that this evidence would have been unfavorable to Defendant.

In deciding whether to draw this inference you should consider whether the evidence not produced would merely have duplicated other evidence already before you. You may also consider whether Defendant had a reason for not producing this evidence, which was explained to your satisfaction. See *Zimmermann v. Assocs. First Capital Corp.*, 251 F.3d 376 (2nd Cir. 2001).

**Defendant objects to this instruction as baseless and inflammatory and not supported by any evidence.**

**Request to Charge No. 11 Calculation of Damages**

If you find in favor of Mr. Foster-Bey under his claim of discrimination, pursuant to Title VII, then you must award him such sum as you find by the preponderance of the evidence will fairly and justly compensate him for any damages you find he sustained as a direct result of defendant's decision to promptly take prophylactic steps to protect him from the discrimination. Plaintiff's claims for damages include three distinct types of damages and you must consider them separately:

1.      Any wages and/or fringe benefits plaintiff would have earned during the course of his employment with the Postal Service if he had not been discriminated against commencing in or about February 21 of 2001 through the date of your verdict, minus the amount of earnings and benefits that plaintiff received from other employment during that time.

2.      Any and all damages sustained by plaintiff, such as future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, as well as other non-pecuniary losses.

You must enter separate amounts for each type of damages in the verdict form and must not include the same items in more than one category.  Remember, throughout your deliberations, you must not engage in any speculation, guess or conjecture and you must not award damages under this charge as a result of sympathy. *Model Jury Instructions (Civil)*, 8th Cir. '5.02 (1998).

### Request to Charge No. 12.    Calculation of Damages

You must use sound discretion in fixing an award of damages, drawing reasonable inferences where you find them appropriate from the facts and circumstances in evidence.  You should consider the following elements of damages, to the extent you find them proven by a preponderance of the evidence:

If you find for plaintiff, then he is entitled to recover any amount that will fairly compensate him for the damages that he has suffered to date.

In addition, if you find that plaintiff was reasonably certain to suffer damages in the future from his injuries, then you should award him the amount you believe would fairly compensate him for such future damages.  In calculating future damages, you should consider the age at which plaintiff would have likely retired.

*McDonnell v. ISK Biosciences, Inc., CA* No. H-95-4730 (S.D. Texas 1999).

**Request to Charge No. 13 Business Judgment**

Plaintiff must show more than that Defendant made an unwise business decision or an unnecessary personnel move, or acted arbitrarily.  Good faith errors in an employer's business judgment are not, standing alone, evidence of race discrimination.

> *Smith v. Monsanto Chemical Co.,* 770 F.2d 719, 723 n. 3 (8th Cir. 1985), *cert. denied*, 475U.S.1050(1986).
>
> Respectfully submitted,
>
> KEVIN J. O'CONNOR
> UNITED STATES ATTORNEY,
>
> _____
>
> BY:    Anna V. Crawford
>        Special Assistant U.S. Attorney
> Law Department
>        United States Postal Service
>        8 Griffin Road North
>        Windsor, CT 06006-0170
>        Federal Bar No. ct01394
>        Tel. (860) 285-7309
>
>
>        Plaintiff, George Foster-Bey,
>
> BY:    _____
>        Marc L. Glenn ct21369
>        Law Office of W. Martyn Philpot, Jr. LLC
>        409 Orange Street
>        New Haven, CT 06511
>        phone:  (203) 624-4666
>        fax:  (203) 624-5050,
>        e-mail:  Philpot.law@snet.net